IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ESMERALDA TRIGO, *as Surviving Relative and Representative of the Estate of* ALBERT RAMIREZ*, Deceased.*  **Plaintiff,**  v.  FORT BEND COUNTY, TEXAS; FORT BEND COUNTY JAIL; SHERIFF TROY NEHLS; SHERIFF ERIC FAGAN; WELLPATH, LLC; WELLPATH RECOVERY SOLUTIONS, LLC, DR. AQUEEL HASHMI, and DR. JAMES DAVIS,  **Defendants.** | Civil Action No. _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COMES NOW, Plaintiffs, **ESMERALDA TRIGO,** *as Surviving Relative and Representative of the Estate of* **ALBERT RAMIREZ***, Deceased*, and files this, their *Plaintiffs' Original Complaint* and for their claims for relief, state and allege that:

### I.   PRELIMINIARY FACTS

1. The Fort Bend County Jail has a long and troubling history of failing to provide adequate care of inmates despite many warnings from the Texas Commission on Jail Standards. Between 2005 and 2022, at least two hundred (200) inmates have died in the custody of the Fort Bend County Jail and Sheriff's Office. Twenty (20) inmates have died in Fort Bend County's jails in 2023 alone.

2. Albert Ramirez, Plaintiff's late brother, was another pretrial detainee who was

1

denied proper medical care by Fort Bend County while in its custody. As a result, Mr. Ramirez became another preventable and unfortunate death that occurred while in Fort Bend County Jail.

3. On June 4, 2021, Plaintiff, Esmeralda Trigo, received a phone call from Albert Ramirez's bunkmate letting her know that Mr. Ramirez had been sick for two days. The caller went on to detail that Mr. Ramirez had not attempted to get out of bed and was left lying in his own feces.

4. Over the next several days Plaintiff called Fort Bend County Jail to speak to the Chaplin to get information on Mr. Ramirez's condition. She also attempted to speak with the Sherriff. Plaintiff never received a call back.

5. On that same day Plaintiff received the call from Mr. Ramirez's bunkmate, June 4, Mr. Ramirez was taken to Oakbend Medical Center's emergency room due to the severity of his symptoms. Ms. Trigo was not notified.

6. The next day, June 5, hospital personnel reached out to "the police officer within [Mr. Ramirez's] room" on how to gain consent for an urgent procedure. When calling the "police department," hospital personnel were told by "police department nurses" they had to gain authorization from their supervisors.

7. After waiting two hours, hospital personnel called the Fort Bend County Jail and spoke with Nurse Valentine in the Jail medical department. Hospital personnel were informed that consent had been received over an hour prior from Durelle Cardiff, Fort Bend County Health Services Administrator, but Fort Bend County Jail failed to notify anyone at Oakbend.

2

8. Mr. Ramirez's condition continued to deteriorate. Three days later, on June 8, 2021, hospital personnel once again called Fort Bend County Jail to obtain consent for an urgent procedure. Durelle Cardiff, the official who previously gave consent for the identical procedure days prior, now refused to do so and said consent would have to come from the "patient's family member."

9. Finally, days after Mr. Ramirez was admitted to Oakbend and during which Plaintiff had been requesting information on his well-being, Durelle Cardiff called Plaintiff for consent for the pending medical procedure. Cardiff merged the call with hospital personnel, so Plaintiff was able to provide consent promptly that same day, June 8, less than 30 minutes after hospital personnel sought the request.

10. However, on the phone call Plaintiff asked what hospital her brother was admitted to but was refused that information.

11. Instead, on June 10, 2021, six days after Mr. Ramirez was admitted, Plaintiff was told she needed to rush to Oak Bend Medical Center to see her brother because he was dying. By this time, Mr. Ramirez was intubated and on a ventilator. He could not speak to say goodbye to his sister one last time.

12. On June 13, 2021, Mr. Ramirez was given last rights by a hospital priest, extubated and slowly died over the course of the day.

13. Later, Plaintiff was contacted by Fort Bend County Sheriff, Troy Nehls. He told Plaintiff he was sorry about her brother.

## II.   JURISDICTION & VENUE

14. This court has jurisdiction over Plaintiffs' federal claims, under 28 U.S.C. § 1331

and 2201, 42 U.S.C. § 1983 and 1988, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiffs' state law claims, if any.

15.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because the incidents at issue took place in Fort Bend County, Texas, within the United States Southern District of Texas.

16.   This Court has jurisdiction over the foreign Defendants, Wellpath, LLC and Wellpath Recovery Solutions, LLC, pursuant to § 17.042 of the Texas Civil Practice and Remedies Code. The foreign Defendants' contacts with the State of Texas are purposeful and Plaintiff's cause of action arises from and relates to these contacts. The Defendants have advertised in the State of Texas for employees, have numerous contacts with Texas governmental entities, employ a significant number of Texas residents, and enjoy significant financial gain from its business conducted within the State of Texas.

17.   When viewed as whole, the foreign Defendants' contacts with the State of Texas are continuous and systematic, and the Defendants clearly have purposely availed themselves of the benefits of this forum.

18.   Jurisdiction over foreign Defendants, Wellpath, LLC and Wellpath Recovery Solutions, LLC, would comport with the traditional notions of fair play and substantial justice.

### III.   PARTIES

19.   Plaintiff, ESMERALDA TRIGO, as Surviving Relative and Representative of the Estate of ALBERT RAMIREZ, Deceased, is a resident of Fort Bend County, Texas.

20. Defendant, FORT BEND COUNTY, TEXAS, is a governmental body existing under the laws of the State of Texas and can be served with process by serving the County Judge of Fort Bend County, Texas (an office currently held by KP George) at 401 Jackson Street, Richmond, Texas or wherever he may be found.

21. Defendant, FORT BEND COUNTY JAIL, is a governmental body existing under the laws of the State of Texas and can be served with process by serving the County Judge of Fort Bend County, Texas (an office currently held by KP George) at 401 Jackson Street, Richmond, Texas or wherever he may be found.

22. Defendant, SHERIFF TROY NEHLS, is an individual and can be served with process at 1410 Williams Bay Boulevard, Richmond, Texas or wherever he may be found.

23. Defendant, SHERIFF ERIC FAGAN, is an individual and can be served with process at 1410 Williams Bay Boulevard, Richmond, Texas or wherever he may be found.

24. Defendant WELLPATH, LLC ("hereinafter Wellpath") is a foreign limited liability company under the State of Delaware, doing business in Texas, and may be served with summons upon its registered agent, Corporate Creations Network, Inc., 5444 Westheimer Rd, Suite 1000, Houston, Texas 77056.

25. Defendant WELLPATH RECOVERY SOLUTIONS, LLC ("hereinafter Wellpath Recovery") is a foreign limited liability company under the State of Florida, doing business in Texas, and may be served with summons upon its registered agent, Corporate Creations Network, Inc., 5444 Westheimer Rd, Suite 1000, Houston, Texas 77056.

26. Defendant, DR. JAMES DAVIS, is an individual and resident of Texas and may be served at 22777 Springwood Village Parkway, Spring, Texas 77389 or wherever he may

be found.

27. Defendant, DR. AQUUEL HASHMI, is an individual and resident of Texas and may be served at 6902 South Peek Road, Richmond, Texas 77407 or wherever he may be found.

### IV.   ADDITIONAL FACTS

28. On February 15, 2020, Plaintiff, Albert Ramirez, was arrested for allegedly robbing the Dollar General store located at 1623 1st Street, Rosenburg, Texas.

29. On February 16, 2020, a questionnaire was performed by Fort Bend County Jail personnel in which it was noted Mr. Ramirez had Liver Cancer. Mr. Ramirez also told Regina Lisiecki that he was diagnosed with cancer and had to take medication for his condition.

30. No further physical examination, blood work, or other treatment was done after learning of Mr. Ramirez's liver cancer diagnosis. Nor did anyone ever follow up on who diagnosed Mr. Ramirez with liver cancer, what other conditions he may have had, or what medical treatment was necessary for his condition.

31. Mr. Ramirez was seen by Dr. Aqeel Hashmi on February 23, 2020, for mental health issues, but Dr. Hashmi did not seek to provide, refer, or recommend Mr. Ramirez received medical treatment for his sever liver issues. Mr. Ramirez saw Dr. Hashmi for multiple visits after without any effort by Dr. Hashmi to provide the aforementioned care.

32. It wasn't until a year later, on February 16, 2021, when a yearly health assessment was undertaken did a medical or jail personnel order laboratory tests and attempt to gain Mr. Ramirez's prior medical records. Mr. Ramirez once again stated he had been diagnosed

with multiple liver issues.

33. In the physical exam, the registered nurse noted Mr. Ramirez had slight jaundice and a distended abdomen.

34. On February 20, 2021, Mr. Ramirez authorized "Wellpath – Fort Bend County Jail" to obtain his medical records.

35. The following day on the 20th, Mr. Ramirez's lab results came back with many categories outside acceptable limits but notably his platelets were critical, and his Hepatitis C virus antibody was high.

36. Two days later, on the 22nd, it is finally noted in Mr. Ramirez's jail medical records that he was Hepatitis C positive and has cirrhosis. The records correctly state that Mr. Ramirez has not been treated for either of these conditions.

37. On February 24, Dr. James Davis notes Mr. Ramirez had a distended abdomen, and his liver disease was poorly controlled. Yet, no additional treatment is given.

38. A few days later, on the 28th, Mr. Ramirez complains he has stomach pain and needs to see the doctor but is not seen.

39. On March 1, 2021, Mr. Ramirez begins a long consistent request for new medication for his liver after seeing Dr. Davis. Ultimately his request is logged everyday as a "Priority: 1 (high)" every day for over three months with no answer, only ending when he is admitted to Oakbend emergency room on June 4, 2021.

40. On March 3, 2021, another set of lab results are noted, with Mr. Ramirez's platelet count still critical, but no new treatment is given.

41. On May 23, 2021, an officer at Fort Bend County Jail notes Mr. Ramirez is having

trouble getting out of bed, isn't eating and has diarrhea. While it is unclear if this ever improves, on May 27th, it is noted Mr. Ramirez soiled himself again and reference is made to the prior May 23rd incident.

42. Another set of lab results are returned, with many categories outside of normal limits, mirroring Mr. Ramirez's past lab results. However, this time no platelet count is given as the results state "Unable to perform an accurate platelet count due to aggregation of the platelets." No action is taken with this result.

43. On June 2, 2021, two (2) days prior to his June 4th hospital admittance, Mr. Ramirez complains his feet and leg are swollen and requests medical attention. He states he has "been like this for a while." As a result, Dr. Davis finally saw Mr. Ramirez, noted his clinical status is worse, prescribed medicine to help with fluid retention, and concluded that he will follow up with his patient in ninety (90) days. During this visit, Mr. Ramirez stated he had increased abdominal distention and pain, swelling of his feet and ankles, and dyspnea over the last several weeks.

44. As previously described above, Mr. Ramirez was taken to Oakbend Medical Center's emergency room on June 4th, 2021. On this date, he was in great pain, had difficulty walking, and ultimately only a few days left of his life.

45. Even though he pleaded for months, Mr. Ramirez never received medication or treatment for his liver while in Defendants' custody and otherwise under their care.

V. CAUSES OF ACTION

**42 U.S.C. SECTION 1983 VIOLATONS OF PLAINTIFFS' CIVIL RIGHTS**

46. Plaintiffs incorporate by reference all preceding paragraphs.

8

47. All the above individually named Defendants were state actors, acting under color of state law and, therefore, are liable under 42 U.S.C. § 1983. Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

48. Under the Due Process Clause of the Fourteenth Amendment and the prohibition against cruel and unusual punishment under the Eighth Amendment, a detainee has a constitutional right to not have serious medical needs be met with deliberate indifference on the part of the confining officials, governmental entity, or other individual acting under the color of state law. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001); *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001).

49. Mr. Ramirez had a right under the Fourteenth Amendment and Eighth Amendments to the United States Constitution while being detained to be free from indifference to his medical needs. The Defendants, together and individually, treated Mr. Ramirez with deliberate indifference, negligence, and gross negligence to his serious medical needs.

50. Section 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, Plaintiff alleges that Defendants deprived him of his Fourth, Eighth, and Fourteenth Amendment rights and those rights, privileges, and immunities secured by these

Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated this provision by the following actions and/or omissions:

a. by acting with deliberate indifference to a substantial and known risk of harm.

b. by failing to intervene, where such intervention would have prevented further injury, including Albert Ramirez's death.

c. by ignoring Albert Ramirez serious medical needs.

d. and failing to impose proper and sufficient policies and/or procedures as to the screening and/or reassessment of inmates/detainees/arrestees in regard to their medical needs and/or training concerning the same.

### A. DEFENDANTS WELLPATH, WELLPATH RECOVERY, DR. DAVIS, AND DR. HASHMI

51. Defendants Wellpath, Wellpath Recovery, Dr. Davis, and Dr. Hashmi were under contract or other relationship with Fort Bend County and/ or the Fort Bend County Jail to provide medical services to individuals inside the jail. In doing so, Wellpath, Wellpath Recovery, Dr. Davis, and Dr. Hashmi acted under the color of state law.

52. Wellpath and/ or Wellpath Recovery employed, controlled, or otherwise directed the nurses who provided care to Mr. Ramirez at the Fort Bend County Jail.

53. Dr. Davis is a "person" under 42 U.S.C. §1983. He acted under the color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein. In the course and scope of his employment, was required to observe, watch over, and provide medical care to persons placed in custody within the Fort Bend County Jail.

54. Dr. Hashmi is a "person" under 42 U.S.C. §1983. He acted under the color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein. In the course and scope of his employment, was required to observe, watch over, and provide medical care to persons placed in custody within the Fort Bend County Jail.

### B. DEFENDANT SHERIFF TROY NEHLS

55. Troy Nehls is a "person" under 42 U.S.C. §1983. He acted under the color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein. in the course and scope of his employment, was required to observe, watch over, and manage persons placed in custody within the Fort Bend County Jail. This responsibility of care cannot be delegated.

56. Sherriff Nehls is for inmate healthcare, including Mr. Ramirez's health, safety, and welfare, which Sheriff Nehls wholly failed to care for due to his willful blindness and outright deliberate indifference in delegating this duty to insufficient medical providers and jailers.

57. The customs, practices and *de facto* policies resulted in the constitutional violations that caused Mr. Ramirez's death. Sheriff Troy Nehls was the active sheriff of Fort Bend County from the beginning of Mr. Ramirez's detainment to 2021.

### C. DEFENDANT SHERIFF ERIC FAGAN

58. Eric Fagan is a "person" under 42 U.S.C. §1983. He acted under the color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein. in the course and scope of his employment,

was required to observe, watch over, and manage persons placed in custody within the Fort Bend County Jail. This responsibility of care cannot be delegated.

59. Sherriff Eric Fagan is for inmate healthcare, including Mr. Ramirez's health, safety, and welfare, which Sheriff Eric Fagan wholly failed to care for due to his willful blindness and outright deliberate indifference in delegating this duty to insufficient medical providers and jailers.

60. The customs, practices and de facto policies resulted in the constitutional violations that caused Mr. Ramirez's death.

### D. DEFENDANTS FORT BEND COUNTY AND FORT BEND COUNTY JAIL

61. Defendant Fort Bend County, Texas as a matter of policy, practice, custom and/or procedure did not have adequate staffing, had a practice and customs of not doing rounds, despite past warnings about same from the Texas Commission on Jail Standards, subjecting Mr. Ramirez to inadequate care and supervision.

62. Defendants, their employees, and their agents, failed to train and failed to adequately supervise the actions and omissions of the jail officers and employees and agents of the Fort Bend County Jail.

63. The death of Mr. Ramirez was caused by Defendants' acts and omissions and those acts and omissions violated his constitutional right to due process, making Defendants liable to Plaintiff under and pursuant to 42 U.S.C. § 1983, 1985.

64. Fort Bend County and its agents, employees, contractors, and servants jointly and severally were responsible for plans, schemes, policies, procedures, and training methods that they created and implemented, regarding staffing of the jail, guarding and observation

of inmates, which plans, schemes, policies, procedures and training methods amounted to improper hiring, training and staffing. Defendants engaged in deliberate indifference to their duty of care by either indifferent policies or failure to enforce existing policies for routine and required monitoring of inmates.

65. Fort Bend County and its agents, employees, contractors, and servants jointly and severally were responsible for treating and caring for Mr. Ramirez's medical needs. Defendants acted deliberately indifferent to their duty of care by being aware of the substantial risk of serious harm to Mr. Ramirez and disregarding this risk by not ignoring his medical care.

## VI.   DAMAGES

21. Plaintiffs incorporate by reference all preceding paragraphs.

22. Plaintiff, Albert Ramirez, suffered great mental anguish and pain leading up to his death, and such is actionable through his estate as well as his funeral expenses.

24. Plaintiff, Esmeralda Trigo, in all likelihood will experience at least great pain and suffering, mental anguish in the past and future, loss of brotherly comfort, love and society, and exemplary damages.

## VII.   PUNITIVE DAMAGES

25. Plaintiffs incorporate by reference all preceding paragraphs.

26. Plaintiffs request punitive damages against each individually-name defendant.

## VIII. ATTORNEY FEES

27. Plaintiffs are entitled to recover attorney fees and expenses under 42 U.S.C. § 1983 and §

1988.

## IX.  JURY TRIAL

28. Plaintiffs demand a trial by jury on all issues triable to a jury.

### PRAYER

Plaintiffs prays the Court enter judgment and award damages for Plaintiffs against the Defendants, jointly and severally. Plaintiffs also pray that the Court finds that Plaintiffs are the prevailing party in this case and award attorney fees and costs and all litigation expenses, pursuant to federal and state law, as noted against Defendants. Plaintiffs also pray that the Court award pre-and post-judgment interest and that the Court award punitive damages against all individually named Defendants to Plaintiffs.

Respectfully submitted,

FARRAR & BALL, LLP

WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer St.
Houston, Texas 77008
Office: (713) 221-8300
Facsimile: (713) 221-8301
Email: bill@fbtrial.com

and

**MELUGIN LAW FIRM, PLLC**

By: */s/Joe Melugin*
Joseph C. ("Joe") Melugin
State Bar No. 24054038
Federal Bar No. 876851
112 E. Fourth Street

                                                Houston, Texas 77007
                                                Telephone: (713) 299-7506
                                                Facsimile: (713) 583-3601
                                                *joe@meluginlaw.com*

                                                ***ATTORNEYS FOR PLAINTIFFS***